```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA           :      08 CR. 036 (JGK)

        - v. -                     :

Eric Peels,                        :

             Defendant.            :

-----------------------------------X
```

**DEFENDANT ERIC PEELS' MOTION IN LIMINE AND MEMORANDUM IN SUPPORT THEREOF TO SUPPRESS EVIDENCE BASED UPON AN ILLEGAL SEARCH AND SEIZURE**

 

LEONARD F. JOY, ESQ.
Federal Defenders of New York, Inc.
Attorney for Defendant
**Eric Peels**
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8737

**MARTIN S. COHEN**
<u>Of Counsel</u>

TO: **MICHAEL J. GARCIA, ESQ.**
    United States Attorney
    Southern District of New York
    One. St. Andrew's Plaza
    New York, New York 10007
    Attn: **AMY LESTER, ESQ.**
        Assistant United States Attorney

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA          :      08 CR. 036 (JGK)

        - v. -                    :

Eric Peels,                       :

             Defendant.           :

-----------------------------------X
```

**DEFENDANT ERIC PEELS' MOTION IN LIMINE AND MEMORANDUM IN SUPPORT THEREOF TO SUPPRESS EVIDENCE BASED UPON AN ILLEGAL SEARCH AND SEIZURE**

The defendant, Eric Peels, hereby moves under Federal Rules of Criminal Procedure 12(b)(3) and 41 to suppress evidence obtained as the result of an illegal search and seizure by the New York Police Department on September 29, 2007. In particular, Mr. Peels moves to suppress a gun that was found following an illegal entry and search of an apartment where he was staying, and to suppress as fruits of the illegal entry and search statements that were made following the discovery of the gun.

<u>Background</u>

Mr. Peels is charged in a one-count indictment arising out of his alleged possession of a gun. The basis of the charge against Mr. Peels is a search conducted of the apartment where Mr. Peels was staying as a guest - 3540 Decatur Avenue, apartment 3K, in the Bronx - by the New York Police Department on September 29, 2007. The police entered the apartment and conducted the

1

search without a warrant and without consent. See Peels Declaration dated July 3, 2008 ("Peels Declaration"); letter from Assistant United States Attorney Amy Lester to defense counsel Hugh Mundy, dated April 25, 2008, attached to the Affirmation of Martin S. Cohen as Exhibit A.

On September 26, 2007, Mr. Peels allegedly assaulted his girlfriend in the lobby of a building located at 3524 Hull Avenue, in the Bronx. See Complaint, attached to Cohen Affirmation as Exhibit B.

On September 29, 2007, at approximately 4:50 p.m., the police received a tip that Mr. Peels was staying at 3540 Decatur Avenue, apartment 3K (the "Decatur apartment"). See Complaint ¶2(c). Without obtaining a search warrant, the police went to the Decatur Apartment:

> Detective-1 and other NYPD officers drove to [the Decatur] address, entered the building, and stationed themselves in the hallway outside Apartment 3K. Detective-1 then called for uniform support. Once the uniformed officers arrived at the scene, they joined Detective-1 and the other NYPD officers in the hallway outside Apartment 3K.

See Complaint ¶2(c).

A. <u>The Warrantless Entry</u>

On the afternoon of September 29, 2007, Mr. Peels was staying as a guest at the Decatur apartment, having slept there the previous night. See Supplemental Declaration of Eric Peels dated May 5, 2008, attached to Cohen Affirmation as Exhibit C, ¶3

2

("Peels Supplemental Declaration"). When the police arrived, Mr. Peels and the individual renting the apartment, whom Mr. Peels knew as "Sister Pat," were the sole occupants of the apartment. See Peels Decl. ¶¶ 2, 4. (The Government has identified this individual as Patricia Davis. See Lester letter dated April 25, 2008.)

When the police knocked on the door of the Decatur apartment, Mr. Peels was standing in the hallway outside of the back room of the apartment. See Peels Decl. ¶4. He heard the police bang on the door and shout "Police!" See id. Moments later, officers barged into the apartment with guns drawn, yelling at Mr. Peels to put his hands up. See id. As the police approached, Mr. Peels backed up into the back room of the apartment with his hands raised above his head. See Peels Decl. ¶5. Mr. Peels stopped moving, and was surrounded by police officers. See id. Mr. Peels was then handcuffed with his hands behind his back, patted down, and escorted out of the back room. See id.

At no time did the police ask Mr. Peels for permission to enter the apartment, nor did he provide such consent. See Peels Decl. ¶8. In addition, Mr. Peels did not hear the police ask Ms. Davis for her consent to enter the apartment before barging in with their guns drawn. Id. For her part, according to the government, Patricia Davis stated, "in substance, that the police

did not ask for, and therefore she did not expressly provide, verbal consent to enter her apartment." <u>See</u> Lester letter dated April 25, 2008.

B.   <u>The Warrantless Search</u>

After Mr. Peels was handcuffed with his hands behind his back, he was taken outside of the back room. <u>See</u> Peels Decl. ¶7. Police officers stood between him and the entranceway to the back room. <u>See</u> <u>id.</u> Mr. Peels could see officers searching within the back room. <u>See</u> <u>id.</u> Mr. Peels saw one officer opening the drawers of a dresser, while another officer was lifting the corners of the mattress off of its bed frame. <u>See</u> <u>id.</u> After lifting up each corner of the mattress, the officer came out of the back room to where Mr. Peels was standing with other police officers and said, "I found something." <u>See</u> <u>id.</u> The officer was holding a sock. <u>See</u> <u>id.</u>

The police officers did not ask Mr. Peels for his consent to search the back room, nor did Mr. Peels provide such consent. <u>See</u> Peels Decl. ¶8. Mr. Peels did not hear the police ask Ms. Davis for her consent to search the back room. <u>See</u> <u>id.</u>

<u>Argument</u>

"The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." <u>United States v. Newton</u>, 369 F.3d 659, 664 (2d Cir. 2004). An overnight

4

guest "shares in his host's legitimate expectation of privacy in the premises." United States v. Snype, 441 F.3d 119, 130 (2d Cir. 2006).

"Under the Fourth Amendment, the warrantless search of a home is "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980); see also Agnello v. United States, 269 U.S. 20, 32 (1925) ("The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws."). Without consent or exigent circumstances, the police are prohibited from entering a person's home without a warrant for the purpose of either making an arrest or conducting a search. See Illinois v. Rodriquez, 497 U.S. 177, 181 (1990); see also United States v. Nezaj, 666 F. Supp. 494, 498 (S.D.N.Y. 1987) ("the Constitution does not allow police officers, exercising their own discretion, to enter dwellings of third parties . . . in search of persons known to be felons.").

Once a defendant has established a basis for his motion to suppress, such as a search conducted without a warrant, the government bears the burden of proving by a preponderance of the evidence that the search was proper. See United States v. Mendenhall, 446 U.S. 544, 557 (1980); United States v. Calvente, 722 F.2d 1019, 1023 (2d Cir. 1983).

A.  No Consent To Enter

The police officers who entered the Decatur apartment did

5

not have a warrant authorizing them to do so. Indeed, rather than seeking to obtain a warrant based on the information they had received, the police entered the private home of a third party, arrested an occupant, and conducted a search. In order to rebut the presumptive unreasonableness of the entry, the Government must show that an exception, such as consent, existed entitling the police to enter the Decatur apartment.

Here, the police never sought, or received, the consent of Mr. Peels or Ms. Davis to enter the apartment. See Peels Decl. ¶ 8; Lester letter dated April 25, 2008. Instead, the police barged into the apartment with guns drawn. Without consent, the entry into the apartment was unreasonable, and the Fourth Amendment requires that the fruits of the entry and subsequent search – the gun and statements made by Mr. Peels – be suppressed. See e.g., United States v. Vasquez, 638 F.2d 507, 526, 527 (2d Cir. 1980) (finding no consent for warrantless entry; suppressing evidence).

B. No Consent to Search

Even were the Court to find that, despite Ms. Davis's denial when questioned by the government, that she consented to the entry, such consent does not extend to the search of the back room.

"[N]othing in the Fourth Amendment remotely implies that officers who, for the purpose of arrest, have intruded, albeit

lawfully, upon the privacy of an individual without an arrest warrant, may further invade that privacy by searching without a warrant, otherwise required by the Fourth Amendment, in derogation of law." United States v. Mapp, 476 F.2d 67, 76 (2d Cir. 1973). The standard for measuring the scope of a person's consent under the Fourth Amendment "is that of 'objective' reasonableness - what would the typical reasonable person have understood by the exchange between the officer and the [consenting person]?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). The scope of a search is generally defined by its expressed object. Id.

Here, Ms. Davis denies that she provided consent to enter her apartment. See Lester letter dated April 25, 2008. Even were the Court to find that Ms. Davis consented to the entry for the purpose of arresting Mr. Peels, such consent cannot reasonably be understood to extend to the search of the back room. Accordingly, the Fourth Amendment requires that the fruits of the search be suppressed. See, e.g., United States v. Santos, 303 F. Supp. 2d 333, 334, 342-44, 349 (S.D.N.Y. 2003) (where police officers responded to anonymous tip regarding gun and received consent to enter apartment, consent to enter did not extend to warrantless search of bedroom or living room; finding police testimony that defendant and his family consented to search to be incredible, and suppressing evidence).

Following the unlawful entry into the Decatur apartment, the unlawful arrest of Mr. Peels, and the unlawful search of the back room of the Decatur apartment, Mr. Peels allegedly threatened the police and made other statements regarding the discovery of the gun. Those statements were made as the result of the illegal entry and search of the Decatur apartment, and, as such, they too should be suppressed as the fruits of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 485 (1963).

## Conclusion

**Wherefore**, it is respectfully requested that this Court enter an order suppressing the physical evidence and statements recovered from Mr. Peels by the New York Police Department on September 29, 2007, which were obtained in violation of the Fourth Amendment to the United States Constitution.

Dated: New York, New York
       July 3, 2008

LEONARD F. JOY, ESQ.
Federal Defenders of New York, Inc.
Attorney for Defendant
**ERIC PEELS**
52 Duane Street - 10th Floor
New York, New York  10007
Tel.: (212) 417-8737

s/ Martin S. Cohen
MARTIN S. COHEN
Of Counsel.

TO: **MICHAEL J. GARCIA, ESQ.**
    United States Attorney
    Southern District of New York
    One St. Andrew's Plaza
    New York, New York  10007
    Attn.:  **AMY R. LESTER, ESQ.**
            Assistant United States Attorney