# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Leonard F. Joy
*Executive Director*

*Southern District of New York*
John J. Byrnes
*Attorney-in-Charge*

September 2, 2008

By Hand and ECF

The Honorable John G. Koeltl
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1030
New York, NY 10007

Re:    **United States v. Eric Peels,**
       **08 Cr. 36 (JGK)**

Dear Judge Koeltl:

I represent Mr. Peels in the above-captioned case, and respectfully submit this letter in response to the questions posed by the Court during the hearing on August 27, 2008 (the "Hearing").

I.    **Plain View: Absent Probable Cause, Officers Cannot Touch or Move Sock**

Under the plain view doctrine, an officer cannot move an object to determine whether it is, or contains, contraband unless she has probable cause to do so. Arizona v. Hicks, 480 U.S. 321, 326 (1987) (expensive stereo equipment in plain view in squalid apartment; officer could not move it to determine whether stolen; to do so constituted independent search requiring probable cause). "Put another way, it must have been 'immediately apparent' to the officer before seizing the item, not after seizing it, that it was of criminal character." United States v. Barrios-Moriera, 872 F. 2d 12, 16 (2d Cir. 1989) (abrogated on other grounds). Reasonable suspicion that an object is contraband is not sufficient to justify moving it. Hicks, 480 U.S. at 328; see Londono, 659 F. Supp. at 760, 762 (during lawful protective sweep, officer saw block-shaped object in plain view; suspicion that object was a weapon not sufficient to justify flicking it with finger); United States v. Rudaj, 390 F. Supp. 2d 395, 406 (S.D.N.Y. 2005) (suppressing plastic bags seized in plain view, even though bags resembled other properly seized bags that contained contraband; incriminating contents not immediately apparent without further search); United States v. Santos, 303 F. Supp. 2d 333, 344 (S.D.N.Y. 2003) (suspicion that "hump" under rug might be weapon did not justify moving rug); United States v. Gordon, 1996 WL 112205, at *3-*4 (S.D.N.Y. March 13, 1996) (seizure of check not justified; incriminating character not apparent until after officers picked up and examined check).

The Honorable John G. Koeltl
September 2, 2008
Page 2

Similarly, a police officer, acting without probable cause, may not touch an item to determine whether its incriminatory nature is immediately apparent. United States v. Londono, 659 F. Supp. 758, 762 (E.D.N.Y. 1987). As then-District Judge McLaughlin explained, prior to Hicks, the Second Circuit permitted a cursory inspection, including touching or moving an object, to determine the significance of the items in plain view. Id. The Supreme Court "has now made clear, however, that the 'immediately apparent' requirement is not met – and thus the seizure cannot be justified under the plain view doctrine – if the item must be moved even slightly in order to discern its incriminatory nature." Id; see Hicks, 480 U.S. at 325 ("the distinction between looking at a suspicious object in plain view and moving it even a few inches is much more than trivial for purposes of the Fourth Amendment.") (internal quotations omitted).

The "plain touch" analogue to the plain view doctrine is not applicable under the circumstances here, because the officers were not already engaged in a lawful frisk of the sock. See Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). Under the plain touch analogue, an officer is permitted to touch an object to determine whether its incriminatory nature is "immediately apparent" while in the process of conducting a lawful pat-down. Id. During the pat-down, the additional touching of an object whose contour or mass makes its identity immediately apparent does not constitute an additional invasion of privacy beyond that already authorized by the officer's search for weapons. Id. at 375-76. Here, however, the officers were not touching or moving the sock as part of an otherwise lawful search, and such a touching constituted an additional invasion of privacy for which probable cause was required. Cf. United States v. Silva, 714 F. Supp. 693, 696 (S.D.N.Y. 1989) (any act beyond merely viewing what is already exposed clearly constitutes a search under Hicks).

Here, the Government has failed to establish that the officers had probable cause to conduct the additional frisk and search of the sock. The Government elicited no testimony from Sergeant O'Rourke to establish what O'Rourke believed *before* the sock was touched and *before* O'Rourke directed the sock to the attention of Officer Matos. On direct testimony, O'Rourke testified that he saw a "sock," that he directed it to Matos's attention, and that later, when he was on the other side of the room, Matos picked up the sock, showed it to O'Rourke, and that Matos was surprised that the sock contained a gun. (Tr. at 127-28[1]). Matos "made a reference to, you know, you didn't tell me that it was a gun, and I told him, I said, I thought you understood what I was pointing to, that you understood what it was. Somewhat to that effect. I don't remember the exact conversation with him. It was something like that." (Tr. at 128.)

O'Rourke's statement to Matos, that O'Rourke thought Matos knew what O'Rourke meant when he directed the sock to Matos's attention, made *after* Matos showed him that the sock contained a gun, is not sufficient to prove by a preponderance of the evidence what O'Rourke believed *before* the sock was touched or moved. Cf. United States v. Benn, 441 F. Supp. 1268, 1272 (E.D.N.Y. 1977) (government must show facts underlying conclusion that what officer sees before him is in fact incriminating evidence) (citing Terry v. Ohio, 392 U.S. 1,

---

[1] All transcript references are to the suppression hearing held on July 31, 2008.

The Honorable John G. Koeltl
September 2, 2008
Page 3

21-22 (1968) (police officer must be able to point to specific and articulable facts, not "inarticulate hunches."). During his testimony, Sergeant O'Rourke articulated no facts from which a court could determine whether he had probable cause to believe that the sock contained a gun before the sock was touched or moved. Accordingly, the Government has not met its burden of proof. Cf. United States v. Grubczak, 793 F.2d 458, 461 (2d Cir. 1986) (finding incriminating nature of object immediately apparent where officer's "unequivocal testimony was that he had *concluded* that the case [which he picked up and shook] contained lock-picking tools *before* he picked it up.") (emphasis in original).

As for Officer Matos, he expressed surprise that the sock contained a gun. (Tr. at 128.) Such surprise is wholly inconsistent with a finding that Matos had even reasonable suspicion, let alone probable cause, to believe the sock contained a gun. (For the reasons set forth in Mr. Peels earlier submissions, the Court should credit O'Rourke's testimony – that it was he who saw the gun, directed it to the attention of Officer Matos, and that Matos expressed surprise when he discovered the gun – over Officer Matos's inconsistent testimony on this subject. (Tr. at 127-128 (O'Rourke); Tr. at 100, 102, 104-05 (Matos); Defendant's Proposed Findings of Fact and Conclusions of Law at 15-16.) At the least, the inconsistency between Matos and O'Rourke militates against a finding that the Government has satisfied its burden of proof that the officers had probable cause to believe the sock contained a gun before touching or moving it.)

**II.    Consent to Search Involuntary in Coercive Environment; Presence of Guns Not Dispositive**

Courts have found involuntary consent where officers did not draw their weapons. See e.g., United States v. Isofia, 2003 WL 21018853, at *4 (S.D.N.Y. May 5, 2003) (aff'd, 370 F.3d 226) (team of eight or nine agents entered defendant's apartment without warrant; consent to search involuntary). Conversely, courts have found voluntary consent even when officers having drawn their weapons. See e.g., United States v. Snype, 441 F.3d 119, 131 (2d Cir. 2006) (finding voluntary consent despite forcible entry by heavily armed SWAT team: individual testified that she gave voluntary consent, and that the forcible entry was "way, way before " her consent); United States v. Lopez, 2007 WL 2696595, at *5 (D.Conn. Sept. 12 2007) (finding voluntary consent despite entry with weapons drawn; by the time consent was given, chaotic scene had dissipated, officers had holstered weapons, and only one officer was present). In the latter cases, the Government presented evidence that the coercive pressure that might render consent involuntary had diminished.

In Snype, the Second Circuit compared the circumstances in that case to those in United States v. Mapp, 476 F.2d 67 (2d Cir. 1973):

> [The facts in Snype] are markedly distinguishable from those in United States v Mapp, a case in which this court refused to find a consent to search voluntary where it followed a 2:00 a.m. forcible entry into a home without any "steps to establish an atmosphere of

The Honorable John G. Koeltl
September 2, 2008
Page 4

> relative calm . . . conducive to the making of a knowing and intelligent decision. . . . . Here, in contrast to <u>Mapp</u>, numerous steps were taken that did restore calm to Bean's home before she consented to any search. Thus, as Bean testified, when she gave her consent, she did not do so because she felt threatened in any way by the law enforcement officers remaining on the premises . . . . Indeed, she knew she was not required to give consent."

<u>Snype</u>, 441 F. 3d at 131 (internal citations omitted).

Here, Ms. Davis answered the door of her apartment in response to *two* officers banging on her door (Tr. at 26), and was confronted with four or five detectives wearing bullet-proof vests standing in her doorway and at least four uniformed officers in the hallway. (Tr. at 95-96, 119.) After the police entered, at least one of whom had his gun drawn, Ms. Davis was asked whether anyone else was present in the apartment, responded with a name that Rosado was not familiar with, was shown an old photograph of Mr. Peels, and then said "he's in the back room." As in <u>Mapp</u>, there was no evidence that the officers took any steps to "purge the situation of its coercive pressures" before seeking consent to enter or to search the apartment. <u>United States v. Mapp</u>, 476 F.2d 67, 78-79 (2d Cir. 1973).

Under the totality of the circumstances here, the Government has failed to establish that either the consent to enter or the consent to search the apartment was provided voluntarily. Regardless of whether the police had guns drawn when requesting entry, the show of authority by the police when Ms. Davis answered the door was inherently coercive. For her part, Ms. Davis denied providing consent, and the Government did not offer any evidence concerning Ms. Davis's character that would support a finding of voluntariness. In essence, the Government's argument is that Ms. Davis provided voluntary consent because she did not prevent the officers from entering, but Ms. Davis's actions are equally, if not more, consistent with submission in the face of a show of authority, rather than voluntary consent. Once inside the apartment, not only did at least one officer have his gun drawn while Rosado was questioning Ms. Davis, but no officer requested consent to search. Instead, once Ms. Davis said "he's in the back room," the officers proceeded down the hallway and arrested Mr. Peels. To the extent that "he's in the back room" is considered implicit consent to an implicit request, it was given under inherently coercive circumstances. No officer took any steps to restore calm prior to Ms. Davis providing this implied "consent," and the Court should find that it was not given voluntarily. <u>See</u> <u>Snype</u>, 441 F. 3d at 131.

## II.   Exigent Circumstances

### A.   "Strong reason" that person sought is inside premises requires more than uncorroborated and anonymous tip

In <u>United States v. McDonald</u>, 916 F.2d 766 (2d Cir. 1990), the Second Circuit sitting *en banc* identified the factors generally relevant to determining whether exigent circumstances

The Honorable John G. Koeltl
September 2, 2008
Page 5

justify a warrantless search. 916 F.2d at 769-770. Among the six illustrative factors is whether there is "strong reason to believe that the suspect is in the premises being entered." Id. While the cases are not clear about how strong an officer's reason must be, it must be based on more than an uncorroborated and anonymous tip. See Kerman v. City of New York, 261 F. 3d 229, 236 (2d Cir. 2001) (must have probable cause to enter based on anonymous tip); United States v. Snype, 441 F.3d 119, 134 n.10 (2d Cir. 2006) (must show "reasonable belief" that person is on premises to justify entry).

In Kerman, the police made a warrantless entry based solely on an anonymous and uncorroborated 911 call. 261 F. 3d at 232. The court held that such a tip was insufficient to justify a forced entry, which required probable cause. Id. at 236. Kerman is distinguishable from the majority of exigent circumstances cases, in that the 911 call was the only reason the police sought entry into the apartment. Nevertheless, its requirement that police have probable cause to forcibly enter an apartment is indicative of the importance of the "strong reason" factor. And while no single factor is dispositive in determining whether exigent circumstances are present, McDonald, 916 F.2d at 770, "it will be a rare case in which exigency can support a warrantless entry without some showing of a reasonable belief that the person sought is inside the entered premises." United States v. Snype, 441 F.3d 119, 134 n.10 (2d Cir. 2006). Indeed, I have found no cases in the Second Circuit where exigent circumstances were supported on the basis of something less than probable cause to believe that the sought-after suspect was in the premises to be entered. Compare McDonald, 916 F.2d at 770 (agents "knew" defendant was in apartment); United States v. Medina, 944 F.2d 60, 68-69 (2d Cir. 1991) (agents "clearly had probable cause" to believe suspects were inside apartment); with Snype, 441 F.3d at 134 n.10 (record supported five of six McDonald factors, but lack of proof that there was a reasonable basis for belief that defendant was on premises precluded finding of exigent circumstances).

Here, Detective Rosado received an uncorroborated and anonymous tip regarding "BI," a nickname that Rosado was not familiar with. (Tr. at 21-22, 52.) Rosado's belief that the tipster was referring to Mr. Peels was based solely on the fact that the police had been looking for Mr. Peels in that neighborhood earlier in the day. (Tr. at 51.) This is not a strong enough reason to justify an "invasion of the sanctity of a private dwelling, ordinarily afforded the most stringent Fourth Amendment protection." Kerman, 261 F.2d at 236 (internal quotations, omissions and alterations omitted).

## B.    Exigent circumstances once inside apartment cannot justify search

At the Hearing, the Court asked whether, assuming, *arguendo*, that the officers received valid consent to enter the apartment, exigent circumstances provided a justification for the search and arrest of Mr. Peels after Ms. Davis looked at the photograph of Mr. Peels and stated "he's in the back room." The Court should find that the "exigent circumstances" exception does not justify the search for and arrest of Mr. Peels under this scenario. Otherwise, the warrant requirement will be eroded.

The Honorable John G. Koeltl
September 2, 2008
Page 6

   Absent consent or exigent circumstances, police are required to obtain a search warrant in order to arrest a suspect in a third party's home. See Steagald v. United States, 451 U.S. 204, 211-212, 222 (1981). The requisite consent is not simply consent to enter, but consent to enter a home and conduct a search to make an arrest. Id. at 211-212. In terms of invasiveness, there is a magnitude of difference between an officer seeking entry into a home for an undisclosed reason, and seeking consent to search the home to arrest an individual. There are many reasons why a person might consent to the police entering the apartment and not consent to a search of the home. Finding exigent circumstances post-entry, however, will allow the police to transform consent to a minor invasion of privacy (entry) into a major invasion (search) based on the exigent circumstances created by their entry. Police can thus go to the homes of a suspect's friends and family, request consent to simply enter, and then, when the police "discover" that the suspect is in one of the homes, search for and seize the suspect regardless of whether valid consent was provided.

   In any event, the officers here did not have valid consent to enter, nor did exigent circumstances justify the entry. To the extent that there were exigent circumstances present after Ms. Davis said "he's in the back room," those circumstances were created by the unlawful entry, and cannot justify the search for and arrest of Mr. Peels. See McDonald, 916 F.2d at 772 (law enforcement agents may not create their own exigencies through illegal conduct).

             Respectfully submitted,

             LEONARD F. JOY, ESQ.
             Federal Defenders of New York, Inc.
             Attorney for Defendant
             **Eric Peels**

             Martin S. Cohen
             Of Counsel
             (212) 417-8737

cc:  Amy Lester, Esq.
    Eric Peels